## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**CERTAINTEED CORPORATION**                     **CIVIL ACTION**

**VERSUS**                                                        **NO. 19-400-WBV-KWR**

**DOROTHY MAYFIELD**                            **SECTION: D (4)**

### ORDER AND REASONS

Before the Court is DBMP LLC's Motion for Summary Judgment,[1] which is opposed by defendant, Dorothy Mayfield.[2]  Also before the Court is Dorothy Mayfield's Motion for Summary Judgment,[3] which is opposed by DBMP LLC.[4]  After careful consideration of the parties' memoranda and the applicable law, DBMP LLC's Motion for Summary Judgment is **DENIED**, Dorothy Mayfield's Motion for Summary Judgment is **GRANTED,** and this matter is **DISMISSED WITH PREJUDICE.**

### I.      FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the scope of an indemnity provision contained in a release agreement executed by the parties.  On January 18, 2019, CertainTeed Corporation filed a Complaint for Declaratory Judgment in this Court, asking that the defendant, Dorothy Mayfield, be required to indemnify CertainTeed for any damages awarded against it in an action pending in Louisiana state court for the alleged wrongful death of CJ Mayfield, brought by his adult children, and to reimburse CertainTeed's

---

[1] R. Doc. 31.
[2] R. Doc. 42.
[3] R. Doc. 40.
[4] R. Doc. 45.

attorney's fees, court costs and related litigation expenses incurred as a result of the state court proceeding.[5]  CertainTeed asserts that Mrs. Mayfield is the surviving spouse of CJ Mayfield, who was diagnosed with malignant squamous cell carcinoma in March 2015.[6]  On April 29, 2015, Mr. and Mrs. Mayfield sued several defendants in Louisiana state court, including CertainTeed, alleging that Mr. Mayfield's cancer was caused by exposure to asbestos-containing products manufactured, sold or distributed by several entities, including CertainTeed.[7]  CertainTeed asserts that Mr. and Mrs. Mayfield resolved their claims against it on February 23, 2016, and signed a release (the "Release"), which contains the indemnity clause at issue in this case.[8] CertainTeed claims that, by signing the Release, Mr. and Mrs. Mayfield agreed to indemnify CertainTeed for any all future claims brought against CertainTeed that relate to or may arise out of Mr. Mayfield's exposure to asbestos-containing products that were manufactured, distributed, supplied or sold by CertainTeed.[9]

Mr. Mayfield subsequently died on November 22, 2016.[10]  CertainTeed asserts that on May 19, 2017, it was served with an amended state court petition, in which Mr. Mayfield's surviving adult children seek wrongful death damages from the defendants, including CertainTeed, as a result of Mr. Mayfield's death.[11] CertainTeed claims that Mrs. Mayfield also asserted wrongful death claims against

---

[5] R. Doc. 1.
[6] *Id*. at ¶¶ 6 & 7.
[7] *Id*. at ¶ 8 (*citing* R. Doc. 1-1).
[8] R. Doc. 1 at ¶¶ 10-12 (*citing* R. Doc. 1-2 at p. 1).
[9] R. Doc. 1 at ¶ 12 (*quoting* R. Doc. 1-2 at p. 1).
[10] R. Doc. 1 at ¶ 13.
[11] *Id*. at ¶ 14 (*citing* R. Doc. 1-3); R. Doc. 1 at ¶ 16.

some of the defendants, but did not assert such claims against CertainTeed.[12] Relying on terms of the Release, on August 15, 2018 CertainTeed sent a written demand for indemnification and payment to Mrs. Mayfield, through her counsel, for the wrongful death claims asserted against CertainTeed by her adult children.[13]  Mrs. Mayfield had not responded to CertainTeed's request as of the date CertainTeed filed its Complaint for Declaratory Judgment on January 18, 2019.[14]

On March 14, 2019, Mrs. Mayfield filed a Motion to Dismiss or, Alternatively, Stay Proceedings, asking the Court to either dismiss the case under Fed. R. Civ. P. 12(b)(6) or stay the case until the conclusion of the pending state court litigation.[15] Mrs. Mayfield argued that the Complaint fails to state a claim upon which relief can be granted because the purported indemnity agreement, on its face, does not apply to the wrongful death claims brought by the Mayfield's adult children.   CertainTeed opposed the Motion to Dismiss, asserting that the Court should deny the Motion and exercise its authority to grant summary judgment in CertainTeed's favor under Fed. R. Civ. P. 56(f)(1) because the parties agree that the applicability of the indemnity provision is a question of law.[16]  On April 23, 2020, the Court issued an Order and Reasons, denying Mrs. Mayfield's request to dismiss or, alternatively, stay this matter, and denying CertainTeed's request for summary judgment.[17]  Accepting CertainTeed's allegations as true, as the Court was bound to do, and because Rule

---

[12] R. Doc. 1 at ¶ 17.
[13] *Id*. at ¶ 18.
[14] *Id*. at ¶ 19.
[15] R. Doc. 12.
[16] R. Doc. 16.
[17] R. Doc. 65.

12(b)(6) motions to dismiss are generally disfavored and rarely granted, the Court concluded that CertainTeed had stated a plausible claim for relief. The Court did not, nor was it appropriate at the time to, make a ruling on the merits of the claim.

Before the Court now are cross motions for summary judgment filed by Mrs. Mayfield and DBMP LLC, the legal successor to CertainTeed.[18] The parties agree that the only dispute before the Court is a legal one: whether the indemnification provision contained in the Release signed by Mr. and Mrs. Mayfield covers the wrongful death action brought by their adult children.[19] The indemnification provision provides, in pertinent part, the following:

> In further consideration of the above-described payment, Releasors [CJ Mayfield and Dorothy Mayfield] agree, individually and jointly, to indemnify, hold harmless, and defend the Releasee(s) [including CertainTeed Corporation and its successors] from and against any and all claims, demands, causes of action, lawsuits (including the lawsuit identified above) and/or judgments for contribution or indemnity which are or may be related to, or may result from or arise out of, any injuries or losses sustained by CJ Mayfield or Releasors because of CJ Mayfield's inhalation or ingestion of, contact with, exposure to or use of . . . asbestos-containing products . . . manufactured, distributed, . . . sold or marketed by the Releasee(s) . . . .[20]

DBMP LLC argues that it is entitled to a declaratory judgment that the indemnification provision covers the wrongful death claims asserted by Mrs.

---

[18] DBMP LLC asserts that on October 23, 2019, CertainTeed went through an internal, corporate restructuring, the result of which is that CertainTeed ceased to exist and a new entity, DBMP LLC, was formed. R. Doc. 31-2 at p. 4. DBMP LLC asserts that, as a result of the allocation of CertainTeed's assets and liabilities, all of the asbestos-related assets and liabilities of CertainTeed that are at issue in this case, including the right to indemnification, are now the assets and liabilities of DBMP LLC. *Id.* (*citing* R. Doc. 31-5 at ¶ 2).

[19] R. Doc. 31-2 at p. 6; R. Doc. 40-1 at pp. 4 & 5; R. Doc. 42 at p. 3.

[20] R. Doc. 42 at pp. 2-3 (*citing* "Release at 1"); R. Doc. 31-2 at p. 3 (*citing* "Ex. 2"). The Court notes that there is no "Exhibit 2" attached to DBMP LLC's Motion. This language seems to be copied from CertainTeed's Complaint for Declaratory Judgment. R. Doc. 1 at pp. 3-4 (*citing* Ex. 2). Exhibit 2 to CertainTeed's Complaint is a copy of the Release. R. Doc. 1-2.

Mayfield's adult children because the wrongful death suit, filed as a supplemental petition in the same docket number as the original personal injury case, is, as a matter of law, related to, results from, and arises out of Mr. Mayfield's exposure to asbestos from products manufactured, sold, or distributed by CertainTeed.[21]  DBMP LLC asserts that the indemnification agreement is not limited to claims brought by Mr. or Mrs. Mayfield, and that it applies to "any and all" lawsuits brought by anyone, including future claims.[22]  DBMP LLC urges the Court to apply the "eight corners rule" and compare the four corners of the indemnification agreement with the four corners of the wrongful death petition to determine whether the wrongful death claims are covered.[23]  DBMP LLC argues that, "The indemnification provision unequivocally covers the Wrongful Death Action."[24]

Mrs. Mayfield asserts that DBMP LLC's Motion for Summary Judgment should be denied and that she is entitled to summary judgment because the plain language of the Release shows that Mr. and Mrs. Mayfield intended to indemnify and hold harmless CertainTeed for claims, demands, causes of action, lawsuits and/or judgments that result from or arise out of any injuries or losses sustained by Mr. or Mrs. Mayfield.[25]  Mrs. Mayfield asserts that she and her husband did not agree to indemnify CertainTeed for injuries to others, nor were any others parties or signatories to the Release.[26]  Mrs. Mayfield notes that her adult children's wrongful

---

[21] R. Doc. 31-2 at pp. 6-7.
[22] *Id*. at p. 7.
[23] *Id*. at pp. 5-6 (citing *Plaia v. Stewart Enterprises, Inc.*, 2014-0159 (La. App. 4 Cir. 10/26/16), 229 So.3d 480, 504).
[24] R. Doc. 45 at p. 3.
[25] R. Doc. 42 at p. 7.
[26] R. Doc. 40-1 at p. 1.

death claims do not compensate for injuries or losses sustained by Mr. or Mrs. Mayfield, and instead compensate the children for their own injuries from Mr. Mayfield's death.[27]  Mrs. Mayfield claims that, in narrowly construing release and indemnity language, as mandated, Louisiana courts have previously required that the release and/or indemnity language explicitly demonstrate the releasor's intent to indemnify the defendant from particular claims.[28]  Mrs. Mayfield asserts that the Louisiana Supreme Court and another section of this Court have held that an indemnity provision does not apply to wrongful death claims where such claims were neither contemplated nor specifically included in the release provisions.[29]  Mrs. Mayfield argues that the indemnity provision in this case does not contemplate or mention her adult children's wrongful death claims.[30]

Mrs. Mayfield further asserts that the indemnity provision in this case does not mention indemnification for any wrongful death claim, nor does it mention the survivors of CJ Mayfield, CJ Mayfield's death, that the indemnity provisions would survive CJ Mayfield's death, that his surviving children may have future claims, or any future claim.[31]  Mrs. Mayfield argues that under Louisiana rules of contractual interpretation, under which release provisions are construed narrowly, the only reasonable way to read the indemnity provision, consistent with its purpose, is that Mr. and Mrs. Mayfield's release of CertainTeed did not include an agreement to

---

[27] R. Doc. 42 at p. 7.
[28] *Id.*
[29] *Id.* at pp. 7-8 (citing *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 758; *Manguno v. Turner-Newell, Ltd.*, Civ. A. No. 82-1570, 1991 WL 148129, at *1 n.2 (E.D. La. July 30, 1991)).
[30] R. Doc. 40-1 at p. 4.
[31] R. Doc. 42 at p. 8.

indemnify CertainTeed against the potential future wrongful death claims of their children.[32]

## II.   LEGAL STANDARD

### A. Louisiana Contract law

Because CertainTeed invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332 in its Complaint for Declaratory Judgment,[33] this Court must apply the substantive law of the forum state, Louisiana.[34]   The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity.[35]   Under Louisiana law, "Interpretation of a contract is the determination of the common intent of the parties."[36]   The Court must interpret each provision in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[37] When the words of a contract are clear and unambiguous, the Court will discern the contract's meaning and the parties' intent within the four corners of the document.[38] However, "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of

---

[32] *Id*. at pp. 8-9 (*citing* La. Civ. Code art. 3073; *Young v. Equifax Credit Info. Svcs., Inc.*, 294 F.3d 631, 637 (5th Cir. 2002)).

[33] R. Doc. 1 at ¶ 4.

[34] *Wiley v. State Farm Fire & Cas. Co.* 585 F.3d 206, 210 (5th Cir. 2009).

[35] *Adams v. Falcon Equipment Corp.*, 30,754 (La. App. 2 Cir. 8/21/98), 717 So.2d 282, 287.

[36] La. Civ. Code art. 2045.

[37] La. Civ. Code art. 2050.

[38] *Travelers Ins. Co. v. McDermott Inc.*, Civ. A. No. 01-3218, 2003 WL 21999354, at *8 (E.D. La. Aug. 22, 2003) (*citing* La. Civ. Code arts. 1848, 2046; *American Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993)); *See Joseph v. Huntington Ingalls Incorporated*, 2018-02061 (La. 1/29/20), -- So.3d --, 2020 WL 499939, at *5 (*citing* La. Civ. Code art. 2046; *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 749).

the contract, and of other contracts of a like nature between the same parties."[39] The issue of whether a contract is ambiguous is a question of law.[40]

Additionally, indemnification agreements are strictly construed and the party seeking to enforce the agreement bears the burden of proving the existence and applicability of the indemnity provision.[41] Louisiana courts have held that a contract of indemnity, whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms.[42] The Louisiana Supreme Court has also instructed that when, after applying the general rules governing the construction of contracts and interpreting the provisions of a contract as a whole, "the intent of the parties to indemnify against negligence remains equivocal, a presumption or inference arises that the parties did not intend to hold the indemnitee harmless from such liability."[43]

---

[39] La. Civ. Code. Art. 2053.

[40] *Travelers Ins. Co.*, Civ. A. No. 01-3218, 2003 WL 21999354 at *8 (citing *Slocum-Stevens Ins. Agency v. International Risk Consultants, Inc.*, 27,353 (La. App. 2 Cir. 12/11/95), 666 So.2d 352, 357 (citing cases)).

[41] *Adams v. Falcon Equipment Corp.*, 30,754 (La. App. 2 Cir. 8/21/98), 717 So.2d 282, 287 (citations omitted); *Travelers Ins. Co.*, Civ. A. No. 01-3218, 2003 WL 21999354 at *8 (citing *M.O.N.T. Boat Rental Svcs, Inc. v. Union Oil Co. of California*, 613 F.2d 576 (5th Cir. 1980); *Freeman v. Witco Corp.*, 108 F. Supp. 2d 643, 645 (E.D. La. 2000)).

[42] *Adams*, 717 So.2d at 287; *Freeman*, 108 F. Supp. 2d at 645 (citing *Perkins v. Rubicon, Inc.*, 563 So.2d 258, 259 (La. 1990)); *Home Ins. Co. of Illinois v. National Tea Co.*, 588 So.2d 361, 364 (La. 1991).

[43] *Home Ins. Co.*, 588 So.2d at 364.

### B. Summary Judgment Standard

The parties in this case agree that the indemnity provision at issue should be construed based upon the four corners of the Release agreement.[44] The Louisiana Supreme Court has held that when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate.[45] Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[46] A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[47]

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[48] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[49] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing

---

[44] R. Doc. 31-2 at p. 6; R. Doc. 40-1 at pp. 4-6.
[45] *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 749-50 (citations omitted).
[46] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (*citing* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
[47] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[50]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[51]  In instances where, as here, both parties have moved for summary judgment, "as to each party's motion, all inferences on summary judgment must be drawn in favor of the non-moving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied."[52]

## III.   ANALYSIS

The sole dispute between the parties is whether the indemnity provision contained in the Release, requires Mrs. Mayfield to indemnify CertainTeed (now DBMP LLC) for the wrongful death claims brought by Mrs. Mayfield's adult children in Louisiana state court.

Before turning to the issue of contractual interpretation, the Court feels compelled to set forth a basic distinction between the tort victim's personal injury action and his or her beneficiaries' wrongful death action under La. Civ. Code art. 2315.2.  As Mrs. Mayfield correctly points out, "Our jurisprudence . . . holds that these are legally separate and distinct actions."[53]   Although both actions stem from a

---

[50] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

[51] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[52] *Sambula v. Barnhart*, 285 F. Supp. 2d 815, 821 (S.D. Tex. 2002) (citing *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505; *McAllister v. R.T.C.*, 201 F.3d 570, 574 (5th Cir. 2000)).

[53] *Brown v. Drillers, Inc.*, 630 So.2d 741, 93-1019 (La. 1/14/94) (citing *Taylor v. Giddens*, 618 So.2d 834, 840 (La. 1993); *Williams v. Sewerage and Water Bd. Of New Orleans,* 611 So.2d 1383, 1387 (La. 1993); *Guidry v. Theriot*, 377 So.2d 319 (La. 1979)).

common tort and, therefore, from common factual allegations, under Louisiana law, "the rights arising in instances of this nature are not a single right of action but two separate and distinct actions."[54]   Indeed, these actions arise at different times and compensate parties for different injuries.[55]   As explained by the Louisiana Supreme Court, the tort victim's personal injury action arises simultaneously with the tortious occurrence and compensates for injuries suffered by the tort victim.[56]   In contrast, the beneficiaries' wrongful death action, by definition, comes into existence only upon the tort victim's death and compensates a legislatively created class of persons for the damages they suffered from the moment of the tort victim's death and thereafter.[57]

According to the indemnity provision at issue in this matter, Mr. and Mrs. Mayfield agreed to:

> indemnify, hold harmless and defend the Releasee(s) from and against any and all claims, demands, causes of action, lawsuits (including the lawsuit identified above) and/or judgments for contribution or indemnity which are or may be related to, or may result from or arise out of, any injuries or losses sustained by CJ MAYFIELD or Releasors because of CJ MAYFIELD's inhalation or ingestion of, contact with, exposure to or use of asbestos fibers . . . or other asbestos-containing products which may have at any time been manufactured, distributed, supplied, patented, mined, brokered, designed, sold or marketed by the Releasee(s), and regardless of whether or not any of the aforesaid claims, demands or causes of action against the Releasee(s) are based on negligence, fault, strict liability, intentional

---

[54] *Guidry*, 377 So.2d at 322.
[55] *Taylor*, 618 So.2d at 840 (citing *Guidry*, 377 So.2d 319).
[56] *Brown*, 630 So.2d at 751 (citations omitted).
[57] *Id*. (citations omitted).

tort, or any other legal basis for which recovery of damages
may be sought.[58]

DBMP LLC alleges that the indemnity provision applies to the wrongful death
claims asserted by Mrs. Mayfield's adult children because they relate to, result from
and arise out of Mr. Mayfield's exposure to asbestos in products manufactured,
distributed or sold by CertainTeed.[59]  Mrs. Mayfield argues that the indemnity
agreement does not apply to the wrongful death claims asserted by her adult children
because she and Mr. Mayfield only agreed to indemnify CertainTeed for injuries or
losses that they sustained, not for injuries to others.[60]  DBMP LLC argues that the
indemnification provision is not limited to claims brought by Mr. or Mrs. Mayfield,
and that it applies to "any and all" lawsuits brought by anyone.[61]  Since DBMP LLC
is the successor to certain of CertainTeed's liabilities and assets, including its right
to indemnification at issue here and the liabilities at issue in the wrongful death
action, DBMP LLC argues that it is entitled to a declaration that the indemnification
provision covers the wrongful death action.[62]

"When an agreement contains a doubtful provision, 'including indemnity
agreements, [courts] must endeavor to ascertain what was the common intention of
the parties . . . .'"[63]  Neither party has offered evidence regarding the parties' intent
when they executed the Release.  The only evidence of intent before the Court is Mrs.

---

[58] R. Doc. 1 at ¶ 12 (*quoting* R. Doc. 1-2 at p. 1); R. Doc. 16 at pp. 2-3, 5 (*quoting* R. Doc. 16-2 at p. 1).
[59] R. Doc. 31-2 at p. 7.
[60] R. Doc. 40 at p. 1.
[61] R. Doc. 31-2 at p. 7.
[62] *Id*. (*citing* R. Doc. 1-2).
[63] *Kemp v. CTL Distribution, Inc.*, Civ. A. No. 09-1109-JJB-SCR, 2011 WL 6004268, at *5 (M.D. La. Nov. 30, 2011) (quoting *Home Ins. Co. of Illinois v. Nat'l Tea Co.*, 588 So.2d 361, 364 (La. 1991)) (internal quotation marks omitted).

Mayfield's assertion that, "[A]t the time Mr. and Mrs. Mayfield signed the release, there was no wrongful death action to be indemnified, nor was any contemplated."[64] DBMP LLC has not offered any evidence or argument to rebut Mrs. Mayfield's assertion.  Despite DBMP LLC's arguments to the contrary, the Court finds that it is not clear whether the phrase "any and all claims . . . which . . . arise out of, any injuries or losses sustained by CJ MAYFIELD or Releasors because of CJ MAYFIELD's . . . exposure to . . . asbestos fibers" includes future wrongful death claims filed by the Mayfields' adult children, who were not parties to the Release agreement or within its scope.

The Court must, therefore, determine the parties' intent based upon the four corners of the Release agreement.  The Court recognizes that the Louisiana Supreme Court recently reiterated its holding in *Brown v. Drillers, Inc.* that, with respect to release agreements, "there is no necessity for direct reference to a particular injury, as long as the intent of the parties is clear."[65]  The Court further finds that, as noted in *Brown*, "If the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."[66]  Mrs. Mayfield references a case from another section of this Court, which applied an indemnity provision to future wrongful death claims where the provision specifically mentioned future claims brought by survivors of the injured person pursuant to La. Civ. Code art. 2315.1 (the wrongful death action statute)

---

[64] R. Doc. 40-1 at p. 9.
[65] *Joseph v. Huntington Ingalls Incorporated*, 2018-02061 (La. 1/29/20), -- So.3d --, 2020 WL 499939, at *14 (citing *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 757).
[66] *Brown*, 630 So.2d at 753.

arising out of "the injury, disease *or death*" of the injured person.[67]  Mrs. Mayfield reiterates that the indemnity provision in this case failed to include any mention of a claim related to death.  DBMP LLC has not cited, nor has the Court found, any cases where an indemnity provision like the one at issue in this case, which does not specifically reference wrongful death claims, has been applied to future wrongful death claims asserted pursuant to La. Civ. Code art. 2315.1.

Further, indemnity provisions are strictly construed in Louisiana and the party seeking to enforce the agreement bears the burden of proving the validity and application of the provision.[68]  The Court notes that the indemnity provisions in the Release speak only to claims arising from "the injuries or losses sustained by CJ MAYFIELD" and the "injury or illness of CJ MAYFIELD."[69]  Nowhere in the indemnity provision is the word "death" nor does the word appear anywhere in the Release.  Without citing any support, DBMP LLC asserts that, "The wrongful death lawsuit filed by Mr. Mayfield's children . . . is, as a matter of law, related to, results from, and arises out of Mr. Mayfield's exposure to asbestos in products manufactured, sold, or distributed by CertainTeed."[70]  The indemnity provision, however, is not

---

[67] *Manguno v. Turner-Newell, Ltd.*, Civ. A. No. 82-1570, 1991 WL 148129, at *1 n.2 (E.D. La. July 30, 1991) (the indemnity provision provided that, "Eugene Butler and Irene Butler, do hereby specifically agree to defend, indemnify and hold harmless, Owens-Corning Fiberglas Corporation and the other parties released from and against any and all future claims by survivors of Eugene Butler or by any individual pursuant to Louisiana Civil Code Articles 2315, 2315.1 and 2315.2, which claims in any way arise out of or seek compensation for the injury, disease or death of Eugene Butler as a result of alleged exposure to products manufactured or sold by Owens-Corning Fiberglas Corporation.").

[68] *Adams v. Falcon Equipment Corp.*, 30,754 (La. App. 2 Cir. 8/21/98), 717 So.2d 282, 287 (citations omitted); *Travelers Ins. Co.*, Civ. A. No. 01-3218, 2003 WL 21999354 at *8 (citing *M.O.N.T. Boat Rental Svcs, Inc. v. Union Oil Co. of California*, 613 F.2d 576 (5th Cir. 1980); *Freeman v. Witco Corp.*, 108 F. Supp. 2d 643, 645 (E.D. La. 2000)).

[69] R. Doc. 1-2 at p. 1, ¶ 3 & p. 2, ¶ 3.

[70] R. Doc. 31-2 at pp. 6-7.

written in such broad language, nor would it be appropriate for the Court to construe it so broadly without further support.  Instead, the indemnity provision requires Mr. and Mrs. Mayfield to indemnify CertainTeed for any and all claims arising out of "any injuries or losses *sustained by CJ MAYFIELD or Releasors* [Mr. and Mrs. Mayfield] because of CJ MAYFIELD's . . . exposure to or use of asbestos fibers . . . ."[71]  The Court agrees with Mrs. Mayfield that the plain language of the indemnity provision, which the Court must construe narrowly, indicates that Mr. and Mrs. Mayfield intended only to indemnify CertainTeed for claims arising out of any injuries or losses sustained by Mr. or Mrs. Mayfield, not damages sustained by their adult children for a future wrongful death claim.[72]  The wrongful death claims of Mrs. Mayfield's adult children do not provide compensation for the injuries or losses sustained by Mr. or Mrs. Mayfield.  As noted earlier,  the wrongful death action allows the adult children to recover the damages that they, the adult children, sustained as a result of Mr. Mayfield's death.[73]

DBMP LLC also asserts that the indemnity provision "covers 'any and all claims,' not just specifically identified claims," and that, "[I]t sweeps in any lawsuit that is in any way related to Mr. Mayfield's alleged asbestos-related injuries."[74]  DBMP LLC cites no legal authority to support this assertion.  DBMP LLC's assertion is also contrary to Louisiana law, which requires that indemnity contracts be narrowly construed.  As Mrs. Mayfield points out, the indemnity provision makes no

---

[71] R. Doc. 1-2 at p. 1 (emphasis added).
[72] R. Doc. 40-1 at pp. 9-10.
[73] La. Civ. Code art. 2315.1(A)(1).
[74] R. Doc. 45 at p. 3.

mention of wrongful death claims or of Mr. Mayfield's survivors, Mr. Mayfield's death, or any future claims at all.[75]  There is also no indication in the Release that the parties thought Mr. Mayfield would die as a result of his injuries.  The indemnity provision refers only to the "injuries or losses sustained by CJ MAYFIELD or Releasors."[76]  This language supports Mrs. Mayfield's position that she and Mr. Mayfield did not intend to indemnify CertainTeed for wrongful death claims.

Additionally, the Louisiana Supreme Court has held that if, after applying the general rules of contract construction, the intent of the parties to indemnify against negligence remains equivocal, "a presumption or inference arises that the parties did not intend to hold the indemnitee harmless from such liability."[77]  The Court finds that, because the intent of the parties to indemnify against wrongful death claims is equivocal in this case, there is a presumption that the parties did not intend for Mr. and Mrs. Mayfield to indemnify CertainTeed for future wrongful death claims brought by their adult children.  DBMP LLC has not offered any evidence or legal authority to rebut that presumption.  The Court finds that DBMP LLC has failed to prove that the indemnity provision applies to the wrongful death claims asserted by Mrs. Mayfield's adult children because DBMP LLC has not shown that Mr. and Mrs. Mayfield intended to indemnify CertainTeed for future wrongful death claims.  The Court, therefore, concludes that DBMP LLC has failed to establish that Mrs. Mayfield

---

[75] R. Doc. 40-1 at p. 11.
[76] R. Doc. 1-2 at p. 1.
[77] *Kemp v. CTL Distribution, Inc.*, Civ. A. No. 09-1109-JJB-SCR, 2011 WL 6004268, at *5 (M.D. La. Nov. 30, 2011) (quoting *Home Ins. Co. of Illinois v. Nat'l Tea Co.*, 588 So.2d 361, 364 (La. 1991)) (internal quotation marks omitted).

must indemnify DBMP LLC against the wrongful death claims filed by her adult children. Accordingly, DBMP LLC's Motion for Summary Judgment must be denied.

The Court further finds that Mrs. Mayfield's Motion for Summary Judgment must be granted because she has established that the indemnity provision does not contemplate, nor expressly describe, indemnity for future wrongful death claims brought by the Mayfields' adult children. Viewing the facts and inferences in the light most favorable to DBMP LLC, the non-moving party with respect to Mrs. Mayfield's Motion for Summary Judgment, the Court finds that the plain language of the indemnity provision indicates that Mr. and Mrs. Mayfield agreed to indemnify CertainTeed only for injuries or losses that Mr. and Mrs. Mayfield sustained. DBMP LLC has failed to assert any factual allegations or present evidence to dispute Mrs. Mayfield's allegation that when she and Mr. Mayfield signed the release, "there was no wrongful death action to be indemnified, nor was any contemplated."[78] As such, the Court finds that Mrs. Mayfield is entitled to summary judgment and that DBMP LLC's Complaint for Declaratory Judgment must be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that DBMP LLC's Motion For Summary Judgment[79] is **DENIED**, and Dorothy Mayfield's Motion For

---

[78] R. Doc. 40-1 at p. 9.
[79] R. Doc. 31.

Summary Judgment [80] is **GRANTED.** This action is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, September 28, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[80] R. Doc. 40.